UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENNETH M. WORKMAN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>BRENT REINKE, Director of IDOC,<br><br>　　　　　　Defendant. | Case No. 1:10-cv-00081-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court in this prisoner civil rights matter is Defendant Brent Reinke's Motion for Summary Judgment (Dkt. 37). Also pending is Plaintiff's Motion for Permission for Leave of the Court to Proceed with Presenting Exhibits (Dkt. 33). The Court finds that decisional process would not be aided by oral argument, and it will resolve these matters after consideration of the parties' written briefing. D. Idaho L. Civ. R. 7.1(d).

After being fully advised, the Court enters the following Order granting Defendant's Motion for Summary Judgment.

## BACKGROUND

In 2001, Plaintiff was the driver of a vehicle on Interstate 84 that crashed into two pickups that were legally parked, one in front of the other, on the shoulder of the highway. (Dkt. 37-5, Ex. B.) Diane King and Anthony Barton were standing between the

**MEMORANDUM DECISION AND ORDER - 1**

pickups when they were struck, and both were seriously injured. (Dkt. 37-5, pp. 11-14.) Plaintiff had high levels of heroin, amphetamine, and methadone in his blood at the time of the crash, and the State charged him with two counts of aggravated driving under the influence (DUI), one count of possession of a controlled substance, and a sentencing enhancement of being a persistent violator of the law. (Dkt. 37-5, Ex. B.)

Plaintiff eventually agreed to plead guilty to the aggravated DUI counts and to the persistent violator charge, in exchange for the State's dismissal of the possession count and its agreement to recommend a sentence of life in prison with 25 years fixed. (Dkt. 37-5, Ex. B.) Ada County District Judge Deborah Bail did not follow the recommendation and instead sentenced Plaintiff to life in prison without the possibility of parole on each count. (*Id.*)

Under the plea agreement, the State was also allowed to seek restitution, and the prosecutor filed a Motion for Civil Judgment for Restitution in the amount of $700,000. (Dkt. 37-6, Ex. F.) Plaintiff was represented by counsel at a restitution hearing, after which Judge Bail ordered him to pay $32,391.44 in restitution, with interest accruing annually. (Dkt. 37-6, Ex. G.) Judge Bail's order also serves as a civil judgment against Plaintiff. (*Id.*)

The restitution order was sent to the Idaho Department of Correction (IDOC), and, beginning in September 2003, IDOC began deducting 25% of the funds in Plaintiff's inmate trust account on a monthly basis to go toward satisfying the judgment. (Dkt. 37-11, Affidavit of Shirley Audens at ¶ 9.) These automatic deductions occurred pursuant to

**MEMORANDUM DECISION AND ORDER - 2**

IDOC written policy, and the employee who implemented the policy has no discretion in the matter. (Audens Aff. at ¶¶ 3, 6-7.) Monetary gifts to prisoners are not exempt from the automatic withholding, unless the court that issued the order expressly exempts them. (*Id*. at ¶ 8.)

On October 6, 2003, Plaintiff began filing concern forms at the prison to complain about the deduction of funds and to request a copy of a garnishment order or a writ of execution. (Dkt. 37-7, Affidavit of Chester Penn at ¶ 10.) Plaintiff received responses from staff indicating that the restitution order was sufficient to justify the deductions, and a copy of the order was sent to him. (Dkt. 37-7, Ex. D.) These responses were unsatisfactory to Plaintiff, so on July 21, 2004, he filed a Motion to Cease and Desist Restitution and Terminate Restitution Withholding in the state district court. (Dkt, 37-6, Defendant's Exhibit D.) In his Motion, Plaintiff argued that the monthly deductions had placed a significant hardship on him while he was in prison. (*Id*. at 2-3.) The district court denied the Motion without comment. (*Id*. at 1.)

Plaintiff was transferred to an out-of-state prison in 2007, where the deductions apparently stopped. (Dkt. 39, p. 2.) When he returned to Idaho in 2009, prison officials again starting deducting funds from his account. Plaintiff submitted new concern forms on this subject, followed by grievances, all of which were unsuccessful. (Dkt. 3, Exhibits D, E.)

On February 16, 2010, Plaintiff filed a Prisoner Civil Rights Complaint in this Court under 42 U.S.C. § 1983. (Dkt. 3.) In his Complaint, Plaintiff alleges that he has not

**MEMORANDUM DECISION AND ORDER - 3**

been presented with notice or had an opportunity to object before the funds are taken out of his account, as required by state law. (*Id*. at 2.) Based on this, Plaintiff claims that his property has been taken from him without due process of law in violation of the Fourteenth Amendment. (*Id*. at 2-3.)

The Court conducted an initial review of the Complaint under 28 U.S.C. § 1915(e) and 1915A, and allowed Plaintiff to go forward with his claims against IDOC Director Brent Reinke, Warden Phillip Valdez, and "others responsible for deducting funds who are presently unknown to Plaintiff." (Dkt. 14, p. 3.) All other named Defendants were dismissed. (*Id*.) Plaintiff later chose to dismiss Valdez and all other unknown employees at the Idaho Correctional Center and to proceed only against Director Reinke. (Dkts. 24, 30.)

Reinke has filed a Motion for Summary Judgment, arguing that (1) Plaintiff did not exhaust his administrative remedies before filing his lawsuit, (2) Plaintiff's claims are barred by the statute of limitations, (3) his due process rights have not been violated, (4) there is no evidence that Reinke participated personally in any alleged violations that may have occurred, and (5) Reinke is entitled to qualified immunity from damages. (Dkt. 37-1, p. 2.) Also pending is Plaintiff's motion requesting permission to submit prisoner affidavits without identifying the prisoners' names, which the Court will address as part of its summary judgment discussion.

For the reasons that follow, the Court concludes that Plaintiff exhausted his administrative remedies and that this action is timely as to claims based on deductions

**MEMORANDUM DECISION AND ORDER - 4**

from Plaintiff's account that occurred after February 16, 2008. Claims that accrued before that date are untimely and will not be considered. The Court further concludes that Plaintiff was not deprived of due process of law, and, moreover, that Reinke is entitled to qualified immunity from damages.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

### 1.     Standard of Law

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Although Defendant has raised the exhaustion defense in his Answer and in a

**MEMORANDUM DECISION AND ORDER - 5**

Motion for Summary Judgment, a claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should ordinarily be argued in an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). Unlike when reviewing a motion for summary judgment, the Court has the discretion to resolve disputed factual issues, if necessary. *Id*.

### 2. The Administrative Review Process

At all relevant times, Plaintiff was incarcerated at the Idaho Correctional Center (ICC), which is a private prison that contracts with IDOC to house prisoners for the state of Idaho. ICC follows the same three-step administrative grievance procedure that IDOC uses, which requires a prisoner to submit an informal concern form describing the problem, followed by the filing of a formal grievance, and appealing any adverse decision. (Dkt. 37-7, Affidavit of Chester Penn.)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (Penn Aff., ¶ 6.) If the issue is not resolved, the prisoner must then complete a grievance form and file the grievance within 30 days of the incident. (*Id*. at ¶ 7.) The grievance form must contain specific information regarding the nature of the complaint, including the dates, places, names of personnel involved, and how the offender has been adversely affected. (*Id*.) The "grievance coordinator" at the prison will route a properly completed grievance to the appropriate staff member, who must respond within 10 days. (*Id*.)

**MEMORANDUM DECISION AND ORDER - 6**

After the staff member responds, the coordinator forwards the grievance to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues a decision. (*Id*. at ¶ 8.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal to the "appellate authority," which is usually the facility head. (*Id*.) Once the appellate authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (*Id*.)

### 3.     Discussion

Reinke has the burden to plead and prove that Plaintiff failed to exhaust his administrative remedies. *Wyatt*, 315 F.3d at 1119. In attempting to carry that burden, he has submitted an affidavit from Chester Penn, the grievance coordinator at ICC. Penn has searched the prison's administrative records and asserts that while Plaintiff filed concern forms touching on the issue of trust account deductions in 2003 through 2006, he did not complete the administrative review process by filing grievance forms and appealing any adverse decision. (Penn Aff., at ¶ 10.)

Penn indicates that Plaintiff did file grievances addressing this subject on December 28, 2009, and January 14, 2010, and that Plaintiff appealed on January 22, 2010, but Defendant contends that these grievances were untimely (filed six years after the initial garnishment of Plaintiff's inmate account), were not specific, and failed to name him personally. Because of these deficiencies, according to Reinke, Plaintiff has not exhausted his remedies properly before coming to federal court.

**MEMORANDUM DECISION AND ORDER - 7**

While the Court agrees that Plaintiff did not complete the prison's established administrative review process before 2010, he clearly raised the relevant issue in his December 29, 2009, grievance:

> Inmate accounts have [been] deducting funds from my account for restitution since 2003 illegally by failing to serve notice of garnishment on me to satisfy my right to due process as gaurrented [sic] under the state and federal constitution. Direct levy action by the IDOC in itself does not exclude their responsibility to give me adequate and timely notice of the above actions so that I could of raised a challenge to the deduction of my funds within the 14 days after being served or commencement of action.

(Dkt. 3-2, p. 9; Dkt. 11-1; Dkt. 37-10, Def.'s Ex. K.) As a remedy, Plaintiff suggested that unless IDOC could produce "valid documents," it "needs to reimburse [him] for all funds deducted between 2003 and 2009." (*Id*.) His appeal was denied. (*Id*.)

In this grievance, Plaintiff is complaining about the allegedly unconstitutional withholding of money from his monthly balance in his account beginning in 2003 and continuing until 2009, based on a lack of "notice," which essentially tracks the claim that he has now raised in this proceeding. Contrary to Reinke's argument, this grievance is timely under prison rules at least as to the most recent instances of the withholding, and, at any rate, prison administrators did not invoke untimeliness as a procedural ground on which to dismiss the grievance.

Nor is Plaintiff's failure to name Brent Reinke personally in a grievance fatal to proper exhaustion. Exhaustion under the PLRA "is not per se inadequate simply because an individual later sued was not named in the grievance," though the necessary level of detail in a properly completed grievance is governed by a prison's administrative rules.

**MEMORANDUM DECISION AND ORDER - 8**

*See Jones*, 549 U.S. at 219. Reinke notes correctly that IDOC written policy directs that a grievance must "contain specific information such as dates, places, and names" (Dkt. 37-8, Ex. A, p. 5), but when the identity of the individual responsible for enforcing a prison policy that is adversely affecting a prisoner is unknown to him – as appears to be the case here – it is still possible to provide "specific information" in a grievance without necessarily providing a name. Plaintiff's grievances were otherwise reasonably specific as to the actions that he was challenging and the range of dates over which those actions had occurred, and there is no indication that administrators were confused about the nature of his problem. To the contrary, they reviewed his complaints and found no violations that they believed needed to be corrected.

The exhaustion requirement is not intended to be a mechanism for giving formal notice to all potential defendants that they might be sued, but is instead designed to alert prison administrators to an alleged problem that might be fixed before a lawsuit is filed. *Jones*, 549 U.S. at 219. If an inmate has (1) set forth the "nature of the complaint" on the grievance form with enough specificity to give notice to prison supervisors of a problem and (2) has completed the grievance appeal process, he has "availed himself of the administrative process the state gave him." *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005). Plaintiff did what was required by *Jones*, to alert the prison to a problem, and he did what was required by *Butler*, to use the materials provided by the state to complete all of the levels of the prison grievance system.

The Court concludes that Reinke has not carried his burden to show that Plaintiff

**MEMORANDUM DECISION AND ORDER - 9**

failed to exhaust his administrative remedies.[1]

## SUMMARY JUDGMENT

### 1.   Standard of Law

Summary judgment is appropriate where a party can show that, as to any claim or defense, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(1)(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *See id.* at 248.

The moving party is entitled to summary judgment if that party shows that each

---

[1] It appears that the warden did not issue a final response in Plaintiff's appeal until after Plaintiff filed his Civil Rights Complaint, but Reinke does not argue that Plaintiff's failure to complete all three steps before filing suit provides a basis for dismissal. In any case, Plaintiff contends that the prison's delay in returning responses to him was the cause of any delay, Dkt. 7-1, p. 4, and the Court agrees with him that a prison cannot claim that the failure to complete a procedural step is a reason for dismissal when the prison did not process a grievance at that step in a timely manner according to its own policies. *See Nuñez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010).

**MEMORANDUM DECISION AND ORDER - 10**

issue of material fact is not or cannot be disputed. To show the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(1)(c)(3).

      The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

      Rule 56(e) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

      **2.    All Claims that Accrued After February 16, 2008, are Timely**

      Reinke contends that to the extent that Plaintiff's due process claim is based on the failure to give him notice and an opportunity to be heard before the *first* deduction from

**MEMORANDUM DECISION AND ORDER - 11**

his trust account in September 30, 2003, his Complaint is untimely and must be dismissed. Alternatively, he argues that only those garnishments that occurred within two years of the filing of the Complaint on February 16, 2010, must be dismissed. The Court agrees with the alternative argument.

In a civil rights case brought under § 1983, the statue of limitations is determined by the law of the state in which the action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-250 (1989); *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)). Section 1983 claims are subject to the state statute of limitations for personal injury actions because such claims have been found analogous to actions for injuries to personal rights. *Wilson*, 471 U.S. at 277 (later overruled only as to claims brought under the Securities Exchange Act of 1934). In Idaho, the limitations period for claims alleging personal injury is two years. Idaho Code § 5-219(4).

In this case, Plaintiff cannot proceed with any claim that arose before February 16, 2008 (two years before he filed his Complaint). This would include any claims of constitutional violations related to the original restitution order, the initial garnishment of Plaintiff's trust account in 2003, and garnishments that occurred up to February 16, 2008. However, the Court liberally construes Plaintiff's Complaint as alleging that *each* deduction by IDOC violates his right to due process of law. Reinke concedes that eight garnishments occurred after February 16, 2008, and claims based on those deductions are timely.

### 3. Plaintiff was not Deprived of Due Process of Law

**MEMORANDUM DECISION AND ORDER - 12**

Although Plaintiff's Complaint survives Reinke's exhaustion and statute of limitations defenses, the Court nonetheless concludes that there are no genuine issues of material fact and that Reinke is entitled to judgment in his favor. On the undisputed material facts presented here, Plaintiff has not been deprived of due process of law.

It is well established that a prisoner retains a property right in his prison trust account. *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985). Before a state or one of its departments can take money from a prisoner's trust account, it must have provided him with due process of law. Due process is a flexible concept, however, and calls for such procedural protections as the particular situation demands. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). To determine the process that is due, a court must balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation through the procedures used and the probable value of additional or substitute procedures; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 334-35.

As to the first *Mathews* factor, while Plaintiff has a private interest in his trust account that is being affected by IDOC's actions, that interest is not as compelling as a non-incarcerated person's interest in controlling his or her own bank account. A prisoner's management of a trust account can be limited by numerous reasonable restrictions. *See, e.g., Foster v. Hughes*, 979 F.2d 130, 132-33 (8th Cir. 1992) (holding that prisoners have no right to place their money in interest bearing accounts). More

**MEMORANDUM DECISION AND ORDER - 13**

generally, a prisoner's constitutional rights are subject to regulations that bear a reasonable relationship to the legitimate penological needs of the prison. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979); *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Next, the risk of an erroneous deprivation of Plaintiff's money was minimized by the specific procedures used in this case. This is not a case in which a prisoner's funds were seized without any advance notice or an opportunity to be heard. Plaintiff was instead given actual notice that the State was seeking restitution in 2002, as authorized by Idaho Code § 19-5304, and he had an opportunity to be heard at the restitution hearing. Plaintiff cannot claim that he was surprised that he would owe money to the victims to compensate them for their losses, and he knew that he owed them precisely $32,391.44 after Judge Bail entered her order. He has also been aware that IDOC is deducting funds from his account on a regular basis since at least September 2003. He received additional process in state court by way of his Motion to Cease and Desist Restitution and Terminate Restitution Withholding, which was denied in the state district court. (Dkt. 37-6, Defendant's Exhibit D.)

Prison officials have followed established statutory and administrative rules in deducting the funds from Plaintiff's account, further minimizing the risk of an arbitrary deprivation. In particular, IDOC has relied on Idaho Code § 11-108 as authority to support its actions. That statutory provision, labeled "execution of civil judgments against prisoners," exempts IDOC from the formal procedural requirements for executing judgments against prisoners that would otherwise be applicable to non-prisoners. Idaho

**MEMORANDUM DECISION AND ORDER - 14**

Code § 11-108(1). It further authorizes IDOC to use a direct levy against inmate trust accounts to satisfy certain judgments, and it prevents prisoners from claiming exemptions. Idaho Code § 11-108(2),(3). IDOC has instituted a written policy that requires an automatic deduction of 50% for any restitution order that is received, or a 25% deduction if the prisoner is already subject to a child support order, and the employee in charge of enforcing these rules has no discretion in the matter. *Cf. Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985) (finding a potentially meritorious due process claim when prison officials deducted money for restitution after a prison disciplinary infraction without statutory authority). The probable value or benefit of additional safeguards – such as notice and an opportunity to be heard before each deduction – would not be great because prison officials are already aware of Plaintiff's financial situation, his funds and personal property are not exempt from execution by statute, and all of his basic needs are provided for regardless of his ability to pay.[2]

Finally, the government has a compelling interest in seeing that crime victims receive restitution in an orderly and efficient manner. Requiring additional procedural safeguards before the prison could deduct money from Plaintiff's account for this purpose would not decrease the already low risk of error, and the current simplified process avoids

---

[2] Plaintiff has made passing references to a diminished standard of living in prison because of deductions from his trust account, but a less comfortable life in prison is not the same thing as being deprived of basic human needs. If the prison refused to provide Plaintiff with the necessities of life because of his inability to pay for them, this would be a potential Eighth Amendment violation, which is independent of the due process argument made here, and the Court expresses no opinion on such a claim.

**MEMORANDUM DECISION AND ORDER - 15**

the administrative and fiscal burdens that would accompany a more cumbersome process.

For all of these reasons, the Court finds that Plaintiff has been provided with the process to which he was due under the Fourteenth Amendment.[3]

### 4. Reinke has Qualified Immunity

Reinke also claims that regardless whether an arguable constitutional violation occurred in this case, he is entitled to qualified immunity. This defense protects government officials from liability for civil damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

For the reasons already expressed, the Court concludes that the conduct of prison officials, including Reinke, did not clearly violate Plaintiff's due process rights. Accordingly, Reinke is also immune from liability for damages under the doctrine of qualified immunity.

## ORDER

---

[3] In his Motion for Permission For Leave of the Court to Proceed with Presenting Exhibits (Dkt. 33) and in his "Rebuttal" (Dkt. 38), Plaintiff suggests that IDOC's policy is being selectively enforced against him, in violation of his right to equal protection of the law. He requests permission to submit affidavits of prisoners, without disclosing their identities, whom he claims are not subject to automatic deduction from their trust accounts despite having outstanding restitutions orders.
   Plaintiff's request will be denied. First, he has not raised an equal protection claim in his Complaint, nor has he sought leave to amend. He has also failed to direct the Court to any authority under the Federal Rules of Civil Procedure or case law that would permit the submission of anonymous affidavits. Most importantly, regardless whether some prisoners could come forward to say that their accounts are not garnished, there is no additional evidence from which one could find that the prison is intentionally discriminating against Plaintiff as opposed to failing to garnish other accounts simply due to negligence, mistake, or a lack of notice of a restitution order.

**MEMORANDUM DECISION AND ORDER - 16**

IT IS ORDERED:

1. Plaintiff's Motion for Permission for Leave of the Court to Proceed with Presenting Exhibits with Statement in Support Thereof (Dkt. 33) is DENIED.

2. Defendant Reinke's Motion for Summary Judgment (Dkt. 37) is GRANTED



DATED:  **September 22, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge

.

**MEMORANDUM DECISION AND ORDER - 17**